Thank you, Your Honor. This is Mike Madison on behalf of the appellants in this matter. This case focuses on whether the lower court was appropriate in finding as a matter of law that the savings clause in the disability rider did not apply in this case. We argue that it was in fact an error by the lower court because it found that the clause could not have applied. The court found that the ambiguous term of proof or that the decedent had an opportunity, a reasonable opportunity to provide proof previously precluded the savings clause applying in this case. In doing so, the lower court read into the language of the rider terms that were not there. The rider itself does not contain a definition of the phrase proof. It's an ambiguous term. The lower court went as far as to read into that rider some forms that were sent along to the decedent eight years prior in 2004. By taking that extra step and defining the phrase proof as an ambiguous term, the lower court was going against the required tenant under . . . JUSTICE SCALIA Isn't the word proof something that is pretty well known? It just means bring in some evidence. The notion that the evidence that your client had to bring in was a result of the Social Security, which in any number of cases we have said isn't determinative in any way of whether somebody is disabled for ERISA purposes, for insurance purposes. It's a different standard. I'm puzzled why your client, and it's a very different standard, would not bring in whatever evidence he had at the time. CHIEF JUSTICE ROBERTS Justice Calabresi, I understand that position, but it's our argument that that term proof is ambiguous. You say that it can be any type of proof. By taking that position, it opens up a catch-22. In this case, the insurance company is taking the position that almost any proof would have done and therefore would have allowed this disability rider to apply. Because that term is ambiguous, they can in another case say, well, the proof that we thought would have applied to Mr. Clark, well, that's not sufficient here. That's not proof, and then deny the claim later. It's the ambiguity of that term that is the issue. JUSTICE SCALIA However, what was submitted was enough to meet the requirements of the policy is where the question of any ambiguity in what is needed would come in, but that a notice of disability with whatever you had seemed to be required. I don't know why the what is enough to meet their requirements makes ambiguous the notion that you had to do something. MR. WHITE That goes back to what would be my second argument, which is there had to be a reasonable opportunity to provide proof. As the moving party here, the insurance company, they did not provide anything suggesting that he had a reasonable opportunity to provide proof. What they submitted was that there were forms that were to be submitted by the physician. There is no evidence in the record suggesting that the forms could have or were able to be submitted by a physician, that there were forms that could have been completed by the employer. That was their burden to prove, showing that, in fact, that evidence was available to Mr. Clark at some point prior. And we would argue that by failing to provide that information or proof that that information actually existed to Mr. Clark, they failed to meet their initial burden on their motion. THE COURT But, Counsel, Mr. Clark, as I understand it, did nothing in response to having received any of those documents. So is it a reasonable response, even assuming that it's ambiguous, the phrase, and even assuming that it might have been difficult for the employer and or the doctor to have provided that information, is it a reasonable response to those issues to simply throw up your arms and do nothing? MR. CLARK Well, Dr. Ramos, I wouldn't accept out of hand that he did nothing. There's no proof in the record with respect to what he did, but to suggest that he may have gotten those forms and then given up, we don't know, based on this record, whether he JUSTICE SOTOMAYOR We know that the forms were not, that forms were sent repeatedly, even just before he died, and no forms were sent back. Now, there may be different reasons why at one point he didn't send things back. What puzzled me is that at the very end, when the question was the reestablishment of the insurance, no one sent anything back and said, look, this guy's dying. He can't send in the forms. That, as a spouse, that would have been something that put people on notice. MR. RAMOS Correct. And you're referring to his efforts to reinstate the policy. And agreed, he didn't respond to their inquiries of additional information with respect to reinstatement. We would argue that his interaction with respect to reinstatement is different than the applicability of the disability waiver, or excuse me, the disability rider. Again, I think that is further evidence that the information was not available to him. He did not have a reasonable opportunity to provide proof. Had he had that proof JUSTICE SCALIA What basis do we have to conclude that he didn't have a reasonable opportunity to provide proof? MR. RAMOS The fact that he took the extraordinary steps of applying to Social Security to seek their determination that he was disabled, I will admit there's no affirmative statement that's why he did it, but the only reasonable conclusion is he applied to Social Security because he thought that was his only opportunity to find a disability. JUSTICE SCALIA He applied to Social Security to get Social Security benefits. MR. RAMOS That's actually, I would respectfully disagree, Your Honor. He submitted in his application on the last forum, he said, I do not want SSD benefits. That was his remark to the Board when submitting his application. JUSTICE SCALIA There's no language in the policy, in the definition of disability, anywhere in the policy that suggests that a Social Security determination, a Social Security Administration determination is the only method of establishing disability. MR. RAMOS Judge Livington, I agree with you. There's no language in the policy at all that says what proof should be submitted in order to prove a disability. He, as the reasonable person, thought, okay, if I go to Social Security, I will get my disability determination and this will apply. And that's our argument, which is, which you just encapsulated, is it's ambiguous. There is no proof. There is no definition of proof. And with that, I see that my time is running out and I will defer to counsel unless the panel has further questions. MS. CAVALERI Good morning, Your Honors. May it please the Court, Valen Cavaleri with Gerber Chiano Kelly Brady on behalf of Companion Life Insurance Company. In hearing the comments from the judges, I think they're exactly on point with this. Did the insured submit enough proof or was it acceptable proof? This is a case where there was no proof provided. The appellant asks us a very narrow issue here and focuses solely on a determination from Social Security. The district court correctly held that there's no language or anything in this case that suggests that that's what Companion required or was the only available proof that could have been submitted under the insurance policy at issue here. The first point I'd like to make is that the appellant's argument is inherently contradictory. The insured generally in an insurance case is always going to argue for the broadest construction of a provision of coverage. And in one part, the appellant is making that by saying, look, they're arguing that the word proof is ambiguous and that it's not defined and so that it should mean any kind of proof. But then in the same vein, their argument is that, well, look, and as counsel said, we took the extraordinary step of getting a Social Security determination. JUSTICE SCALIA I don't think that is their argument. I think their argument is that proof seems to require some quite specific finding by somebody and that they didn't have a finding of that sort by a doctor or something. I don't know why. And that the only finding they could have is that of Social Security. I don't think they're saying that what you're saying. I think the argument has problem enough, but I don't think it's the problem that you're posing. MS. MOSS Yeah, and I would agree with what you're saying. But the part of that that is puzzling is that the record in this case reflects that in 2004, companion had sent forms to the insured and used the terms proof when it described please and it followed up with him, please send back your forms completed as proof of your claim under the waiver of premium benefit. And if I can just discuss these forms for a minute, they mostly looked for subjective statements from the insured himself. Admittedly they did contain a form for the treating physician and also a form for the employer to fill out, but the application for the disability benefit asked simple questions such as, and this was to be signed by the insured, what is the cause of the disability and what are your daily activities at present? And the second form was an occupational description form for the insured to fill out. And this asked simply to describe the nature of the employer's business, the duties of his occupation and then to describe how his disability had interfered with the performance of his job. So where this, that he needed some formal determination of disability other than what companion had reserved to itself in the policy to decide is what's puzzling and a bit troubling to companion under these facts here. Because if social security was what mattered, then companion wouldn't have needed to define disability in the policy. Because companion's definition, I can tell you, is not identical to social security's and as the court pointed out earlier, a private insurer has never been obligated to give full credence to the federal statutory definition or a finding by social security when they're looking at disability under a private policy. But at any rate, he calls in June 2004 and says, I'm disabled. And the company provides him the forms. You need to fill out these forms. But he never sends anything back and keeps making premium payments until 2009. Correct? That's correct. And so companion ended up closing the claim out because they followed up, didn't receive anything back, and then they were never alerted to the fact that he was disabled despite him filing for social security disability and noting on those forms that he had been disabled since at least 2005. There's some evidence that suggests maybe it was even earlier than that. I just wanted to address counsel's remarks. So the SSI benefits, which are separate and apart from social security disability, supplemental security income are paid from a separate pot of money funding from the government. And so I think he was making it clear that maybe perhaps he wouldn't have qualified for the Medicare type benefits, but that he wanted to apply for SSD only. So if you look at the application, it at least occurred to me that that's what he was trying to distinguish on his application. So it's on that basis for all of these reasons that companion is going to ask the court to uphold the district court's decision in this matter, granting it summary judgment and dismissing the complaint. Thank you. Thank you. I want to address what counsel had indicated. She said that the forms that were sent in 2004 were what companion had reserved for itself to define proof under the rider. And again, that's our whole point is they later determined these forms are what we think proof is under the terms of our rider, but they didn't put it in the rider. They had that opportunity. It did not put it in the form, making that term ambiguous. And as soon as that term is deemed ambiguous, this court's decision in Thompson precludes a lower court from finding as a matter of law and summary judgment that they are interpreting that term. Because they had to reserve later in forms that were not in the contract between Mr. Clark and companion, that term is ambiguous. So thank you. Thank you both for your arguments. We will take it under advisement.